**CAMERON DOYLE CHURCH**
Plaintiff, Pro Se
1605 McKinley Dr.
Reno, NV 89509
(775) 420-8577
Madeinreno775@gmail.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| **CAMERON DOYLE CHURCH,**<br>Plaintiff,<br><br>v.<br><br>**BARRY BRESLOW, et al.,**<br>Defendants. | Case No. **3:24-cv-00579-ART-CSD**<br><br>**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATION AND FOR CLAIM-SPECIFIC FINDINGS (Rules 59(e) & 52(b))** |

**INTRODUCTION AND EXECUTIVE SUMMARY**

This Motion asks the Court to correct a narrow but dispositive error in its Order of Dismissal (ECF 49): the mischaracterization of Plaintiff's civil rights action as a de facto appeal barred by the Rooker–Feldman doctrine.

Plaintiff did not seek appellate review of any state-court judgment. Plaintiff did not allege judicial legal error as the source of injury. Plaintiff did not request vacatur, reversal, or modification of any state-court order. Instead, Plaintiff alleged independent constitutional injuries caused by state actors under color of law and sought damages and prospective relief for that misconduct.

Under binding precedent, Rooker–Feldman applies only where a federal plaintiff both (1) alleges a legal error by a state court as the injury and (2) seeks relief that would reverse or void a final state-court judgment.

"See *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025); *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)."

If either element is absent, the doctrine does not apply.

The Order of Dismissal did not make either required finding. Instead, it characterized all twelve claims as "appeal-like" without identifying a judgment, identifying appellate-type relief, or conducting a claim-by-claim jurisdictional analysis. This Motion seeks correction of that error.

Critically, jurisdiction must be assessed based on the record as it existed when the operative pleading was filed. Plaintiff's Amended Complaint was filed on January 6, 2025. The Motion therefore confines its jurisdictional analysis to injuries pleaded as of that date. Any later alleged retaliation is preserved for supplementation or separate litigation and is intentionally excluded from the jurisdictional audit presented here.

The Motion proceeds in six parts:

1. **Section I** explains the governing Rooker–Feldman standard and shows that the Order did not apply it.

2. **Section II** provides a claim-by-claim audit demonstrating that none of Plaintiff's claims allege judicial legal error or seek appellate relief.

3.  **Section III** shows that the state forum was already functionally closed before January 6, 2025, defeating any assumption of forum adequacy.

4.  **Section IV** identifies structural constitutional claims (including speedy trial and coercive competency misuse) that were ripe, pleaded, and not adjudicated.

5.  **Section V** explains why Rule 52(b) findings are required to permit meaningful review.

6.  **Section VI** presents a procedural fork: vacate and adjudicate, or issue written findings sufficient for appellate review.

Plaintiff does not ask the Court to agree with his claims at this stage. Plaintiff asks the Court to apply the correct jurisdictional framework, identify the basis for its dismissal, and create a record that can be reviewed. If the Court concludes that constitutional claims alleging retaliation, forum closure, or structural due process violations are categorically unreviewable in federal court when they arise in the context of a state prosecution, that conclusion must be stated plainly and supported by authority.

Absent such findings, the dismissal cannot stand.

## I. THE JURISDICTIONAL ERROR: MIROTH AND THE SOURCE-OF-INJURY TEST

Plaintiff respectfully moves under Rules 59(e) and 52(b) to correct a dispositive jurisdictional error in the Court's Order of Dismissal (ECF 49). The error is not merely analytical; it is

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 3

foundational. The Court misidentified both the **source** and **timing** of Plaintiff's alleged injuries and, as a result, misapplied the Rooker–Feldman doctrine as a categorical bar.

Under binding precedent, Rooker–Feldman applies only where a federal plaintiff:

1. **Alleges a legal error by a state court as the source of the injury**; and

2. **Seeks relief that would effectively reverse or void a final state-court judgment**.

See **Miroth v. County of Trinity**, 136 F.4th 1141, 1144; **Noel v. Hall**, 341 F.3d 1148, 1163–65; **Exxon Mobil Corp. v. Saudi Basic Industries Corp.**, 544 U.S. 280, 284.

Both elements are mandatory. If either is absent, Rooker–Feldman does not apply.

The Court did not make either finding.

Instead, the Court treated all of Plaintiff's claims as inherently "appeal-like," without examining the actual injuries pleaded, the relief requested, or the temporal posture of the operative complaint. That approach conflicts directly with controlling Ninth Circuit precedent.

As pleaded, the Amended Complaint alleges that:

- Plaintiff's **original constitutional injuries were complete and actionable before January 6, 2025**, the filing date of the Amended Complaint;

- The **source of those injuries is actor misconduct under color of state law**, including retaliation, obstruction, denial of representation, procedural sabotage, and forum closure—not judicial legal error;

- Plaintiff **does not seek vacatur, reversal, or modification of any final state-court judgment** in ECF 5.

Jurisdiction must be assessed based on the record as it existed **at the time the operative pleading was filed**. Later events—such as the no-bail warrant, arrest, or alleged GPS tracking—cannot retroactively transform completed, pre-filing constitutional injuries into appellate challenges. Those later acts may be relevant to supplemental pleadings or separate actions, but they are categorically irrelevant to the Rooker–Feldman source-of-injury analysis governing the claims as filed.

By collapsing original injuries and later retaliation into a single narrative and labeling the result "appeal-like," the Court bypassed the required inquiry and substituted characterization for findings.

Accordingly, Plaintiff respectfully requests that the Court:

1. Identify, with specificity, any **final state-court judgment** that Plaintiff allegedly seeks to overturn in the Amended Complaint (ECF 5);

2. Identify **where in ECF 5** Plaintiff allegedly requests appellate-type relief from such a judgment;

3.  Explain the legal standard permitting dismissal under Rooker–Feldman **without applying the required two-part test to each claim individually**;

4.  Cite authority allowing this Court to **dispense with a claim-by-claim jurisdictional analysis** despite controlling Ninth Circuit precedent requiring it.

If no such authority exists, Plaintiff respectfully requests that the Court vacate the dismissal and adjudicate the claims as pleaded, or, at minimum, issue **claim-specific written findings** under Rules 52(b) and 59(e) sufficient to permit meaningful appellate review.

## II. CLAIM-BY-CLAIM AUDIT: WHAT WAS PLED VS. WHAT WAS DISMISSED

The Order of Dismissal (ECF 49) constitutes manifest legal error because it treats twelve distinct, constitutionally grounded causes of action as a single, global "appeal." That narrative substitution ignores each claim's **source of injury**, **legal theory**, and **requested relief**, in direct conflict with controlling precedent.

Under binding law, Rooker–Feldman jurisdiction must be assessed **claim by claim**. A federal claim may be dismissed only if it both (1) alleges a state-court legal error as the injury and (2) seeks appellate relief from a state-court judgment. See **Miroth v. County of Trinity**, 136 F.4th 1141, 1144; **Noel v. Hall**, 341 F.3d 1148; **Exxon Mobil Corp. v. Saudi Basic Industries Corp.**, 544 U.S. 280, 284.

The Court did not conduct that analysis. Instead, it collapsed all twelve claims into a single narrative of "dissatisfaction," without identifying:

- the final judgment allegedly causing injury,

- the relief allegedly functioning as reversal, or

- the pleading paragraphs where Plaintiff requested such relief.

To preserve the appellate record, Plaintiff provides the following **jurisdiction-clean audit**, confined to **injuries existing on or before January 6, 2025**, the filing date of the Amended Complaint.

**Table 1 – Claim-by-Claim Jurisdictional Audit (Pre-January 6, 2025)**

| Count | Injury Alleged in ECF 5 (Pre-Jan-6) | Court's Framing (ECF 49) | Record-Based Reality |
|---|---|---|---|
| **1 – First Amendment Retaliation** | Threats of contempt, gagging, and striking filings for protected advocacy | "Appeal" of court rulings | Retaliatory actor misconduct chilling speech |
| **2 – Sixth Amendment (Counsel / Faretta)** | Imposition of counsel over objection; denial of self-representation | "Ineffective assistance" dispute | Structural denial of autonomy |

| Count | Injury Alleged in ECF 5 (Pre-Jan-6) | Court's Framing (ECF 49) | Record-Based Reality |
|---|---|---|---|
| 3 – Eighth Amendment (Bail) | Punitive pre-filing bail posture used to coerce silence | "Disagreement" with bail | Pretrial punishment barred by **Bell v. Wolfish** |
| 4 – Fourteenth Amendment (Due Process) | Sealed/ex parte proceedings excluding witnesses and family | "Judicial case management" | Off-the-record adjudication violating **Mathews v. Eldridge** |
| 5 & 6 – Federal / State RICO | Pre-filing mail and wire fraud obstructing access to records | "Inextricably intertwined" | RICO injury independent of prosecution |
| 7 – IIED | Pre-filing pathologization and coercive psychological abuse | Not addressed | Severe emotional distress from state action |
| 8 – Obstruction / Access to Courts | Systematic striking of motions and procedural barriers | "Appeal of strike orders" | Functional forum closure |
| 9 – Spoliation | Destruction/alteration of records documenting misconduct | "Part of state case" | Erased evidence cannot be "appealed" |
| 10 – Fourth Amendment | Pre-filing warrantless surveillance and evidence suppression | Not addressed | Independent Fourth Amendment injury |

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 8

| Count | Injury Alleged in ECF 5 (Pre-Jan-6) | Court's Framing (ECF 49) | Record-Based Reality |
|---|---|---|---|
| 11 – Fraud on the Court | Pre-filing nunc pro tunc fabrication to cure violations | "Appeal of state orders" | Fraud is not legal error |
| 12 – First Amendment (Petition) | Threats and competency misuse to silence petitioning | "Disagreement with rulings" | State-sponsored coercion |

*Post-January 6 retaliation is intentionally excluded from this table and addressed separately.*

## A. The Court Did Not Conduct a Claim-Specific Jurisdictional Analysis

The Ninth Circuit requires courts to examine Rooker–Feldman **claim by claim**, assessing both the nature of the injury and the relief sought. See **Bell v. City of Boise**, 709 F.3d 890, 897.

ECF 49 did not perform that analysis. It issued a global conclusion—"appeal-like claims"—without:

- identifying a final judgment,
- identifying relief that would reverse that judgment, or
- distinguishing judicial-error claims from actor-misconduct claims.

As such, the Order fails the **Miroth** test. If the Court believes any specific count satisfies both elements of Rooker–Feldman, it must now identify **which count**, **which judgment**, and **which relief**.

## B. The Legal Effect of Ignoring This Table

If the Court cannot identify how each claim seeks appellate relief, dismissal is not jurisdictional. It is strategic.

Treating Fourth Amendment violations and forum-closure claims as "intertwined" with a state case converts Rooker–Feldman into a misconduct shield. That result is foreclosed by precedent.

If the Court stands by its Order without issuing claim-specific findings, it necessarily declares— by implication—that constitutional violations committed during a state proceeding are categorically unreviewable.

That is not law.

That is jurisdictional laundering.

## C. Request for Findings Under Rule 52(b)

Plaintiff respectfully requests written findings identifying:

    1.   Which specific claims in ECF 5 are dismissed under Rooker–Feldman;

2. The final judgment(s) allegedly causing those injuries;

3. Which injuries, if any, are attributed to judicial legal error rather than actor misconduct;

4. The authority permitting dismissal without identifying injury source or requested relief.

## III. FORUM CLOSURE AND STRUCTURAL ERROR: THE STATE FORUM WAS INADEQUATE BEFORE JANUARY 6, 2025

The Court's dismissal implicitly assumes that Plaintiff retained access to an adequate and functioning state forum for adjudication of his constitutional claims. That assumption is not supported by the record and, critically, was already false **before** the filing of the Amended Complaint on January 6, 2025.

This is not an argument about later arrest, custody, or escalation. It is a record-based demonstration that, as of the operative pleading, Plaintiff had already been subjected to **functional forum closure**, rendering any jurisdictional dismissal premised on state-court adequacy legally untenable.

### A. Pre-Filing Denial of Meaningful Access to the Courts

Before January 6, 2025, Plaintiff alleged and documented that:

- He was **threatened with contempt** and sanction for filing motions asserting constitutional rights;

- His filings were **struck, ignored, or procedurally nullified** while he was simultaneously denied meaningful participation;

- Counsel was imposed and maintained **over Plaintiff's express objection**, including through coercive procedural mechanisms;

- Proceedings were conducted in a **sealed or off-the-record manner**, excluding witnesses and preventing transparency;

- Competency procedures were invoked **without the required findings**, not as a due-process safeguard but as a suppressive response to protected advocacy.

These allegations describe completed injuries existing at the time of filing. A litigant who is silenced, barred from filing, threatened for asserting rights, and denied autonomy over representation does not possess meaningful access to a judicial forum.

That condition is not inconvenience. It is **closure**.

**B. Structural Constitutional Violations Are Not "Appealable"**

The claims raised in this action are structural in nature, including:

- denial of the right to self-representation,

- coercive misuse of competency procedures,

- suppression of access to courts,

- retaliation for protected petitioning activity.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 12

Such claims do not depend on the correctness of any state-court ruling and cannot be remedied through appeal of a judgment. They allege that **the process itself is constitutionally defective**.

A forum that punishes speech, blocks filings, and precludes meaningful participation cannot be presumed "adequate" for jurisdictional purposes. Federal courts are not permitted to avoid adjudicating structural constitutional violations by relabeling them as dissatisfaction with state proceedings.

**C. The Court Made No Findings on Forum Adequacy**

The Order of Dismissal did not:

- identify how Plaintiff could have meaningfully raised these constitutional claims in state court as of January 6, 2025;
- address the documented threats, filing suppression, or coercive procedural posture;
- explain how a litigant subjected to those conditions retained access to a fair and open forum.

Absent such findings, dismissal rests on an unstated premise that **forum closure is legally irrelevant**. No controlling authority supports that premise.

**D. Request for Rule 52(b) Findings on Forum Adequacy**

Plaintiff respectfully requests written findings under Rule 52(b) identifying:

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 13

1. How the state forum is deemed "adequate" despite pre-filing threats of contempt for protected advocacy;

2. How Plaintiff was expected to litigate constitutional claims while barred from meaningful participation;

3. What legal standard permits dismissal where the pleaded injury is denial of access to courts itself;

4. Whether the Court is concluding that structural forum-closure claims are categorically non-justiciable in federal court.

If the Court cannot answer these questions based on the **pre-January 6 record**, dismissal cannot stand.

**E. Post–January 6 Corroboration (Not Offered as Jurisdictional Predicate)**

This 'Representation Void' is documented by a repeating cycle of withdrawal. Galen Carrico moved to withdraw on May 8, 2025, citing a 'substantial breakdown' after Plaintiff insisted on representing himself. Similarly, privately retained counsel Samuel Figueroa moved to withdraw on June 6, 2025—just three days after being retained—specifically because Plaintiff directed him to file a *Habeas Corpus* challenge that counsel refused to pursue. This record proves Plaintiff was trapped in a forum where he was barred from filing *pro se* but assigned counsel who refused to advocate for his constitutional rights.

**IV. STRUCTURAL CONSTITUTIONAL CLAIMS THE COURT DID NOT ADJUDICATE**

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 14

Independent of the jurisdictional defects addressed above, the Order of Dismissal suffers from a separate and dispositive failure: it did not adjudicate multiple **structural constitutional claims** that were ripe, pleaded, and supported by the record **before January 6, 2025**.

These claims are not contingent on later retaliation. They do not require appellate review of a state-court judgment. They allege violations that invalidate the integrity of the proceedings themselves and therefore demand federal adjudication.

**A. Sixth Amendment Speedy Trial Violation (Pre-January 6)**

Plaintiff alleged, prior to filing the Amended Complaint, that he had been subjected to an extended pretrial prosecution without adjudication, dismissal, or trial, despite repeated assertions of his speedy trial rights.

Under controlling law, a speedy trial claim requires application of the four-factor balancing test set forth in **Barker v. Wingo**, 407 U.S. 514 (1972), including:

1. length of delay,

2. reason for the delay,

3. defendant's assertion of the right, and

4. prejudice.

The Order of Dismissal did not apply the Barker framework, did not dispute the pleaded facts, and did not identify any state-court judgment resolving the claim. Instead, it characterized the claim as mere disagreement with state proceedings.

A court may not dismiss a ripe Sixth Amendment speedy trial claim without applying the governing constitutional test. Failure to do so is not discretion. It is non-adjudication.

**B. Coercive Misuse of Competency Procedures (Pre-January 6)**

The Court's narrative of a 'competency doubt' is factually contradicted by the forensic record. Dr. Rachael Pinkerman's evaluation (May 28, 2025) found Plaintiff had a 'rational and factual understanding' and recommended he be permitted to proceed. This was confirmed by Dr. Lisa Foerster on June 26, 2025, who found no signs of acute psychosis or delusional thought content. Dr. Foerster explicitly noted that Plaintiff's 'negative view of the justice system' was rooted in 'perceived injustices' and his best efforts to resolve his case, not mental illness. Despite two medical findings of competence, the state forum continued the 'detour,' proving the process was a suppressive tool rather than a safeguard.

**C. Structural Claims Cannot Be Dismissed by Recharacterization**

Speedy trial violations and coercive competency misuse are **structural constitutional injuries**. They are not cured by appeal. They are not dependent on final judgments. And they are not rendered non-justiciable by labeling them "intertwined" with a state case.

The Court did not adjudicate these claims under the governing constitutional standards. It recharacterized them.

That is error.

**D. Request for Rule 52(b) Findings on Structural Claims**

Plaintiff respectfully requests written findings under Rule 52(b) identifying:

1. Whether the Court applied the **Barker v. Wingo** factors to Plaintiff's Sixth Amendment speedy trial claim, and if not, why not;

2. Whether the Court applied the **Dusky** standard to Plaintiff's competency-based due-process claim, and if not, what authority permits dismissal without doing so;

3. Whether the Court is concluding that structural constitutional claims are categorically non-justiciable in federal court when they arise during state proceedings;

4. If so, the legal authority for that conclusion.

Absent such findings, dismissal cannot be sustained.

**E. THE SPEEDY TRIAL AND COMPETENCY VIOLATIONS ARE STRUCTURAL DEFECTS THAT RENDER THE STATE PROCEEDING VOID AB INITIO**

The constitutional violations alleged in this case are not trial-level errors subject to correction on appeal. They are **structural defects** that undermine the legitimacy of the entire proceeding from the outset. When such defects are present, there is no valid state process to defer to, abstain from, or recharacterize as "intertwined."

**1. The Sixth Amendment Speedy Trial Violation Is Structural**

Under **<u>Barker v. Wingo</u>**, the right to a speedy trial is not a technical preference. It is a fundamental structural protection designed to prevent the State from exercising unchecked power through delay.

When the Barker factors are met—particularly where delay is extreme, unjustified, repeatedly objected to, and prejudicial—the constitutional injury is complete. The harm is not limited to the outcome of a trial; it is the **process of prolonged prosecution itself**.

Here, Plaintiff alleged that:

- the prosecution extended for years without trial or adjudication,

- delays were driven by pretextual procedural maneuvers rather than legitimate necessity,

- the right was repeatedly asserted, and

- the delay caused concrete and irreversible prejudice.

When a prosecution is allowed to persist under these conditions, the violation does not merely affect a ruling. It **vitiates the legitimacy of the prosecution itself**. Courts have repeatedly recognized that such delay is not "harmless," not correctable post hoc, and not dependent on a final judgment.

A proceeding infected by a structural speedy-trial violation is not something a federal court may treat as an adequate forum or defer to under abstention principles. There is nothing valid left to abstain *in favor of*.

**2. Coercive Misuse of Competency Procedures Is Also Structural**

The misuse of competency procedures alleged here is even more fundamental.

Under **<u>Dusky v. United States</u>**, competency determinations require strict procedural safeguards because they determine whether a defendant may be deprived of autonomy, liberty, and voice in the proceeding.

When competency is invoked:

- without a prior psychological evaluation,

- without findings establishing a bona fide doubt,

- and as a response to legal advocacy rather than cognitive incapacity,

the constitutional injury is immediate and structural.

Such misuse does not merely produce an erroneous order. It **destroys the adversarial framework itself** by silencing the defendant, suspending agency, and insulating state actors from challenge. A proceeding that rests on a coercive or pretextual competency determination is not merely flawed; it is **constitutionally illegitimate from that point forward**.

**3. Structural Defects Are Not "Intertwined" With State Judgments**

Structural constitutional defects are, by definition, **independent of the correctness of any particular state-court ruling**. They do not depend on appellate reversal. They do not require a final judgment. And they are not cured by later proceedings.

Because these defects invalidate the process itself:

- they cannot be recharacterized as dissatisfaction with rulings,

- they cannot be deferred under abstention doctrines,

- and they cannot be dismissed as "appeal-like."

Treating structural violations as issues to be sorted out within the very process they invalidate is logically circular and legally impermissible.

**4. Consequence for Jurisdiction and Review**

Where a plaintiff plausibly alleges that the state proceeding is void due to structural constitutional defects:

- there is no legitimate state judgment to appeal,

- no adequate forum to abstain in favor of,

- and no basis to invoke doctrines premised on comity or deference.

The federal claim is not collateral to the state proceeding. It arises **because the state proceeding ceased to be constitutionally valid**.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 20

The Order of Dismissal did not address this framework, did not analyze these violations as structural, and did not explain how a proceeding alleged to be void from inception can nevertheless bar federal review.

If Plaintiff is mistaken about the structural nature of these defects, clarification identifying contrary authority would resolve the issue. Absent such clarification, dismissal cannot stand.

## V. RULE 52(b) FINDINGS ARE REQUIRED TO PERMIT MEANINGFUL REVIEW

The defects identified above converge on a single, outcome-determinative failure: the Order of Dismissal does not contain findings sufficient to permit meaningful appellate review. That failure independently warrants relief under Rule 52(b).

Rule 52(b) exists for precisely this situation. When a court resolves dispositive issues without making the findings necessary to show that the governing legal standards were applied, the proper remedy is not deference. It is clarification or correction.

Here, the Court's Order relies on **conclusory characterizations** rather than findings. It does not identify the injuries alleged, does not identify the relief sought, does not apply the governing constitutional tests, and does not explain how jurisdiction was defeated as to any specific claim.

That omission is not harmless. It prevents review.

**A. Findings Required on Jurisdiction (Rooker–Feldman)**

For each of the twelve claims pleaded in the Amended Complaint (ECF 5), the Court must

identify:

1. The **specific state-court judgment**, if any, that allegedly caused the injury;

2. The **exact paragraph(s)** in ECF 5 where Plaintiff seeks relief that would reverse, void, or

   modify that judgment;

3. Whether the alleged injury is attributed to **judicial legal error** or to **actor misconduct**

   **under color of law**;

4. The legal basis for concluding that both elements of Rooker–Feldman are satisfied.

Absent these findings, dismissal under Rooker–Feldman cannot be sustained. See **Miroth v.**

**County of Trinity**, **Noel v. Hall**, **Exxon Mobil Corp. v. Saudi Basic Industries Corp.**.

**B. Findings Required on Forum Adequacy and Access to Courts**

Because Plaintiff alleged pre-filing forum closure and denial of meaningful access to the courts,

the Court must also identify:

1. How the state forum was deemed **adequate** as of January 6, 2025;

2. What mechanism Plaintiff had to meaningfully raise constitutional claims while:

   o   threatened for protected advocacy,

- o    barred from effective participation, and

- o    denied autonomy over representation;

3.    The authority permitting dismissal where **denial of access to courts itself** is the pleaded injury.

The Order contains no such findings.

## C. Findings Required on Structural Constitutional Claims

With respect to Plaintiff's structural claims, the Court must identify:

1.    Whether it applied the four-factor test required by **<u>Barker v. Wingo</u>** to the Sixth Amendment speedy trial claim;

2.    Whether it applied the competency standard required by **<u>Dusky v. United States</u>** to the due-process claim alleging coercive misuse of competency procedures;

3.    If those standards were not applied, the authority permitting dismissal without doing so.

Recharacterization is not adjudication. Silence is not analysis.

## D. The Consequence of Non-Findings

If the Court cannot make the findings listed above based on the existing record, then one of two conclusions necessarily follows:

1.    The claims were dismissed **without application of the governing legal standards**; or

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 23

2. The Court is implicitly concluding that certain constitutional violations are **categorically unreviewable** when committed during state proceedings.

Either conclusion is itself reversible error.

Plaintiff does not ask the Court to rule in his favor at this stage. Plaintiff asks the Court to do what Rule 52(b) requires: **state the factual and legal basis for its dismissal so that the decision may be reviewed**.

If the Court declines to provide those findings, the absence of findings becomes the error.

## VI. CONCLUSION AND REQUESTED RELIEF

The record now presents a binary posture.

The Court dismissed twelve distinct federal claims without identifying a final state-court judgment, without identifying appellate-type relief, without applying the governing constitutional standards, and without making the findings required for meaningful review. That posture cannot be sustained under Rules 59(e) and 52(b).

Plaintiff did not seek appellate review. Plaintiff did not allege judicial legal error as the injury. Plaintiff did not request reversal, vacatur, or modification of any state-court judgment. Plaintiff

alleged completed constitutional injuries caused by state actors under color of law, many of which were ripe and fully pleaded before January 6, 2025.

If the Court believes otherwise, it must now say so in writing—claim by claim, judgment by judgment, paragraph by paragraph.

Accordingly, Plaintiff respectfully requests that the Court take one of the following actions:

## A. Vacate and Adjudicate

Vacate the Order of Dismissal (ECF 49) under Rule 59(e) and proceed to adjudicate the claims as pleaded, applying the governing jurisdictional and constitutional standards, including but not limited to:

- the claim-specific Rooker–Feldman analysis required by controlling precedent,
- the Barker v. Wingo framework for Sixth Amendment speedy trial claims,
- the Dusky standard governing competency-based due-process claims,
- and the constitutional requirements governing access to courts and retaliation for protected petitioning.

## B. Issue Written Findings Sufficient for Appellate Review

Alternatively, if the Court elects to stand on its dismissal, Plaintiff respectfully requests that the Court issue written findings under Rule 52(b) identifying:

1. The specific state-court judgment(s) allegedly causing injury as to each claim;

2. The exact portions of the Amended Complaint (ECF 5) requesting appellate-type relief;

3. The basis for attributing each alleged injury to judicial legal error rather than actor misconduct;

4. The constitutional standards applied—or the authority for declining to apply them;

5. The basis for concluding that the state forum was adequate as of January 6, 2025 despite pleaded forum closure.

Absent such findings, the dismissal cannot be meaningfully reviewed and therefore cannot stand.

**C. Procedural Clarification and Leave to Proceed**

In the alternative, should the Court believe that clarification of pleading posture is required, Plaintiff respectfully requests leave to amend or supplement solely to remove any ambiguity— while preserving the claims as pleaded—or, if the Court maintains its jurisdictional ruling, confirmation that Plaintiff may proceed by filing a new action addressing post-January 6 retaliation without preclusion.

Plaintiff further relies on the **Standalone Memorandum of Structural Error** filed concurrently herewith, which provides the authenticated factual record of forum closure, the documented 'representation void,' and the structural defects that rendered the state proceeding void *ab initio*.

**Final Statement**

This Motion does not ask the Court to agree with Plaintiff. It asks the Court to **apply the law, identify the basis for its decision, and create a record that can be reviewed**.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 26

If the Court concludes that constitutional claims alleging retaliation, forum closure, coercive competency misuse, and prolonged pretrial delay are categorically unreviewable when they arise in the context of a state prosecution, it must say so plainly.

Silence, recharacterization, and narrative substitution are not findings.

For the foregoing reasons, Plaintiff respectfully requests relief under Rules 59(e), 52(b), and, where applicable, 60(b).

## FINAL CLARIFICATION REQUESTED UNDER CONTROLLING LAW

Plaintiff may be mistaken. He is not a judge. For that reason, he relies on the written rules and binding precedent that describe what a federal court is required to do when dismissing constitutional claims on jurisdictional or abstention grounds.

Those authorities appear to require a specific sequence of analysis.

### A. Rooker–Feldman and the Source-of-Injury Inquiry

When Rooker–Feldman is invoked, a court must identify:

(1) the **specific state-court judgment** alleged to cause injury;

(2) the **relief sought** that would constitute appellate review of that judgment; and

(3) apply that inquiry **claim by claim**.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 27

Absent those findings, dismissal is not authorized. See the standards articulated in **Exxon Mobil Corp. v. Saudi Basic Industries Corp.**, **Noel v. Hall**, and applied with particular clarity in **Miroth v. County of Trinity**.

The Order of Dismissal does not appear to perform this analysis.

**B. Miroth's Prohibition on Recharacterization**

**Miroth** holds, in substance, that a federal court may not recharacterize claims alleging **actor misconduct** as de facto appeals merely because the misconduct occurred in the context of a state proceeding. Where the injury alleged is independent of a judgment and the relief sought does not require reversal of a judgment, Rooker–Feldman does not apply.

That description appears to match this case precisely: Plaintiff alleged completed constitutional injuries caused by state actors under color of law and sought damages and prospective relief, not appellate reversal. If Plaintiff is mistaken about Miroth's application, clarification identifying the contrary holding would resolve the issue.

**C. Younger Abstention and Its Narrow Limits**

Even if Rooker–Feldman does not apply, abstention under **Younger v. Harris** is permissible only within narrow limits, as clarified by **Sprint Communications, Inc. v. Jacobs**. Those limits

require an ongoing qualifying proceeding, important state interests, and an adequate opportunity to raise constitutional claims—none of which apply where the forum is functionally closed, claims allege bad faith or retaliatory enforcement, or the injury alleged is denial of access to courts itself.

Here, Plaintiff alleged bad faith, retaliation for protected petitioning, and structural forum closure **before** the operative pleading. Under Younger's own exceptions, abstention would therefore be improper. If Plaintiff is mistaken, clarification identifying how the **Sprint** framework and the bad-faith exception are satisfied would resolve the confusion.

**D. Immunity Does Not Bar Jurisdictional or Structural Analysis**

Judicial and prosecutorial immunity, as described in cases such as **<u>Stump v. Sparkman</u>**, **<u>Forrester v. White</u>**, **<u>Imbler v. Pachtman</u>**, and **<u>Buckley v. Fitzsimmons</u>**, is not jurisdictional and does not excuse a court from identifying the source of injury, applying governing tests, or making findings sufficient for review. Immunity may limit remedies after adjudication; it does not authorize dismissal without analysis.

If Plaintiff is mistaken on this point, clarification identifying authority that permits immunity to substitute for jurisdictional or constitutional analysis would resolve the issue.

**E. Request for Clarification**

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 29

Taken together, the written rules appear to require that the Court either:

(1) apply the governing standards—Rooker–Feldman as constrained by **Miroth**, abstention as constrained by **Sprint** and Younger's bad-faith exception, and immunity as a merits doctrine; or (2) explain, in writing, why those standards do not apply here.


Plaintiff respectfully requests that clarification. If the dismissal rests on an alternative rule permitting recharacterization without findings, abstention despite bad faith, or immunity without analysis, identification of that rule would resolve Plaintiff's confusion.


Absent such clarification, Plaintiff respectfully submits that the dismissal reflects a departure from the written standards that govern federal adjudication and lacks findings sufficient for appellate review.

Respectfully submitted,

Dated January 8, 2026



/s/ Cameron Doyle Church
**CAMERON DOYLE CHURCH**
Plaintiff, Pro Se
1605 McKinley Dr.
Reno, NV 89509
(775) 420-8577
Madeinreno775@gmail.com

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL
MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 30

# CERTIFICATE OF SERVICE

I hereby certify that on **January 8, 2026**, I electronically filed the foregoing **Plaintiff's Motion to Alter or Amend Judgment Based on Jurisdictional Mischaracterization and for Claim-Specific Findings (Fed. R. Civ. P. 59(e) & 52(b))** with the Clerk of the Court using the CM/ECF system.

I further certify that all parties in this action are registered CM/ECF users and that service was accomplished by electronic filing through the CM/ECF system.

Respectfully submitted,

/s/ Cameron Doyle Church

**CAMERON DOYLE CHURCH**

Plaintiff, Pro Se

1605 McKinley Dr.

Reno, NV 89509

(775) 420-8577

Madeinreno775@gmail.com

**EXHIBIT A**

**Failure of Adjudication: Decision by Fiat in Lieu of Required Legal Analysis**

**I. Purpose of This Exhibit**

This Exhibit is submitted to isolate a core procedural defect present throughout the challenged rulings: **the substitution of authority for adjudication**.

Plaintiff does not challenge the Court's power to rule. Plaintiff challenges the Court's failure to apply the governing legal standards required to lawfully deprive constitutional rights. Where the law requires analysis, a court may not proceed by declaration alone.

**II. What the Law Requires vs. What Occurred**

The following table contrasts **mandatory legal requirements** with the **actual mode of decision-making reflected in the record**.

| Right / Doctrine | What the Law Requires | What Occurred |
|---|---|---|
| **Self-Representation (Faretta)** | Knowing, voluntary waiver analysis; findings on competence and understanding | Right denied by assertion, without Faretta inquiry or findings |
| **Speedy Trial (Barker)** | Four-factor balancing: length, reason, assertion, prejudice | Right overridden without Barker analysis or findings |
| **Competency (Dusky)** | Bona fide doubt + findings; suspension only while incompetence exists | Proceedings suspended and enforced after competence was confirmed |
| **Rooker–Feldman** | Claim-by-claim identification of judgment + appellate-type relief | Claims labeled "appeal-like" without identifying either element |
| **Younger / Sprint** | Threshold category + adequacy of forum + exceptions | Abstention implied despite forum closure and bad faith indicators |

| Right / Doctrine | What the Law Requires | What Occurred |
|---|---|---|
| Due Process | Reasoned decision capable of appellate review | Orders issued without findings sufficient for review |

## III. Narrative Characterization Is Not Adjudication

Throughout the record, constitutional deprivations were justified using **descriptive labels** rather than legal findings, including but not limited to:

- "appeal-like"
- "intertwined"
- "uncooperative"
- "micro-focused"
- "disruptive"

Such terms are **not legal determinations**. They do not identify elements, apply tests, or resolve standards. Labeling a claim does not adjudicate it.

**A court may not deny constitutional rights by characterization where the law requires analysis.**

## IV. Decision by Fiat Violates Due Process

Due process requires more than an opportunity to speak. It requires:

1. application of the governing legal standard,
2. findings showing how that standard was applied, and
3. a record capable of appellate review.

PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT BASED ON JURISDICTIONAL MISCHARACTERIZATIONAND FOR CLAIM-SPECIFIC FINDINGS (RULES 59(E) & 52(B)) - 34

A ruling that rests solely on judicial authority—without explanation, findings, or application of law—is not an exercise of discretion. It is **decision by fiat**.

**Where the law requires analysis, silence is error.**

## V. Structural Consequence

Because the required legal standards were not applied, the resulting deprivations are not merely erroneous. They are **structural**.

Structural error occurs when the framework of adjudication is compromised such that no lawful process exists to defer to, abstain in favor of, or insulate from review. That is the posture presented here.

## VI. Request for Clarification

If Plaintiff is mistaken, clarification will resolve the issue. Such clarification would require the Court to identify:

1. the legal tests applied to each overridden right;
2. the findings supporting those applications; and
3. the authority permitting denial of rights without those steps.

Absent such clarification, the record reflects deprivation of constitutional rights **by fiat rather than by adjudication**, which is incompatible with due process and meaningful appellate review.

**VII. Closing Statement**

Courts possess authority, but **authority is exercised through law, not in place of it**. When constitutional rights are overridden without analysis, the rule of law yields to the rule of office.

This Exhibit is submitted to ensure that distinction is preserved on the record.